SUSAN OLSON, Adm'r of the Estate of Howard Olson, Deceased, Plaintiff-Appellant, v. OWENS-CORNING FIBERGLAS CORPORATION *et al.*, Defendants-Appellees (The Celotex Corporation *et al.*, Defendants).—JOSEPH O'MALLEY, Plaintiff-Appellant, v. FIBREBOARD CORPORATION *et al.*, Defendants-Appellees (The Flintkote Company *et al.*, Defendants).

First District (4th Division)   Nos. 1—89—2341, 1—89—2342 cons.

Opinion filed May 17, 1990.

Cooney & Conway, of Chicago (James R. Hopkinson, William R. Fahey, and Michael D. Mulvihill, of counsel), for appellants.

Kelley, Drye & Warren and Schiff, Hardin & Waite, both of Chicago (John Dames, Julian Solotorovsky, Carolyn Quinn, Robert H. Riley, and Carol R. Prygroski, of counsel), for appellees.

JUSTICE LINN delivered the opinion of the court:

The estate of Howard Olson and Joseph O'Malley (plaintiffs) filed lawsuits to recover damages resulting from Olson's and O'Malley's prolonged exposure to asbestos products in the course of their employment. Defendants are several corporations which designed, processed, manufactured, distributed or sold products containing asbestos. In this appeal, Owens-Illinois, Inc., Fibreboard Corporation, Pittsburgh Corning Corporation, and Owens-Corning Fiberglas have filed briefs in support of the trial court's dismissal of plaintiffs' complaint pursuant to section 13—213 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 13—213).

Plaintiffs raise three issues on appeal: (1) The statute of repose should not be applied to asbestos-related injuries; (2) if the statute is applicable to such injuries, it must be limited to those that occurred after January 1, 1979 (the effective date of section 13—213); and (3) even if the statute of repose is applicable to asbestos-related injuries occurring before that date, plaintiffs have eight years in which to discover their injuries and file suit, bringing these plaintiffs within the pertinent time limitations.

We affirm the trial court's dismissal of the actions.

BACKGROUND

Howard Olson was exposed to asbestos products from 1938 until

1974, according to the wrongful death and survival action that Susan Olson, administrator of his estate, filed on January 10, 1986. She seeks damages against certain defendants under theories of strict liability and negligence. Likewise, Joseph O'Malley was exposed to asbestos products from 1948 to 1972. He filed a complaint in strict liability and negligence against certain defendants on December 30, 1986.

The allegations and legal theories of the two plaintiffs are substantially the same. Defendants designed, processed, manufactured, sold and distributed the asbestos products to which plaintiffs were exposed during the course of their employment by various Illinois companies. The strict liability counts alleged that the asbestos products were unreasonably dangerous and defective in that they lacked proper warnings of the dangers of asbestos and lacked proper instruction for the handling of the products.

Defendants filed motions for summary judgment as to the strict liability counts, pursuant to the product liability statute of repose in section 13—213 of the Code of Civil Procedure. (Ill. Rev. Stat. 1987, ch. 110, par. 13—213(b).) Plaintiffs filed their response and the court heard oral argument. The judge granted summary judgment in favor of defendants, expressing his view that the law appeared unfair but that he was bound by decisional law which favors the position of defendants, rather than plaintiffs.

Opinion

Before reaching the central issue regarding the scope of section 13—213 and its application to the facts of this case, we address plaintiffs' threshold issue: Should the product liability statute of repose even apply to asbestos-related injuries?

The major reason for not applying the statute, according to plaintiffs, is that asbestos-related diseases have long latency periods and they generally cannot be discovered within the limitations period of section 13—213, rendering asbestos victims without a remedy in strict liability.

The product liability statute of repose states, in pertinent part:

"(b) Subject to the provisions of subsections (c) and (d) no product liability action based on the doctrine of strict liability in tort shall be commenced except within the applicable limitations period and, in any event, within 12 years from the date of first sale, lease or delivery of possession by a seller or 10 years from the date of first sale, lease or delivery of possession to its initial user, consumer, or other non-seller, whichever period expires earlier, of any product unit that is claimed to have injured or damaged the plaintiff, unless the defendant expressly has warranted or prom-

ised the product for a longer period and the action is brought within that period." Ill. Rev. Stat. 1987, ch. 110, par. 13—213(b).

"(d) Notwithstanding the provisions of subsection (b) and paragraph (2) of subsection (c) if the injury complained of occurs within any of the periods provided by subsection (b) and paragraph (2) of subsection (c), the plaintiff may bring an action within 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known, of the existence of the personal injury, death or property damage, but in no event shall such action be brought more than 8 years after the date on which such personal injury, death or property damage occurred." Ill. Rev. Stat. 1987, ch. 110, par. 13—213(d).

Plaintiffs distinguish asbestos-related injury from the more common product liability actions in which a plaintiff who is injured by a defective product immediately realizes the injury. In such cases, the statute of repose is easy to apply. With asbestos-related injuries, however, the plaintiff may be unable to discover his or her injury for many years because of the latency period of asbestos-related illnesses. Accordingly, plaintiffs argue that we should construe section 13—213 in such a way as to exempt asbestos products from those included in the reach of the statute of repose.

The primary authority they rely on to support their contention is a recent decision of the Indiana Supreme Court. In *Covalt v. Carey Canada, Inc.* (Ind. 1989), 543 N.E.2d 382, the Indiana court construed its product liability statute relating to time limitations for filing suit and concluded that its statute would not be applied to injuries caused by asbestos or similar products.

In *Covalt*, the plaintiff was exposed to asbestos products between 1963 and 1971. In 1986, plaintiff was diagnosed as having asbestosis and lung cancer, and brought suit against various manufacturers of the asbestos products. The court held that the 10-year limitation period in the Indiana statute should not apply because the latency period between exposure and the actual manifestation of the disease is so great that few if any persons suffering from asbestos-related disease could ever maintain a strict liability action. The court noted that asbestos is as dangerous to the human body when manufactured as it will be years later. In contrast, many products are safe as manufactured and delivered but may become dangerous and defective over time due to use and abuse. 543 N.E.2d at 385.

Defendants contend that *Covalt* is irrelevant to the interpretation of the Illinois statute because the two jurisdictions have differently worded statutes and Illinois has a line of decisions that give the Illinois statute a

history that the Indiana statute apparently lacks.

We agree that *Covalt* is not, ultimately, persuasive under our own precedents. Also, the Indiana statute of repose includes negligence-based product liability actions, which the Illinois statute does not.

■ On the question of whether the Illinois statute applies to asbestos-related injuries we must answer in the affirmative. Our courts have implicitly held that section 13—213 applies to all strict liability claims involving products, including asbestos products. (See *Costello v. Unarco Industries, Inc.* (1986), 111 Ill. 2d 476, 484, 490 N.E.2d 675, 678-79; *Blazek v. Nicolet, Inc.* (1988), 173 Ill. App. 3d 324, 325-26, 527 N.E.2d 568, 569.) The statute has also been applied to bar a claim for a DES-related injury, another situation in which the disease resulting from exposure to the product has a long latency period. *Zimmerman v. Abbott Laboratories, Inc.* (1989), 189 Ill. App. 3d 744, 545 N.E.2d 547.

Principles of statutory construction and legislative intent further support the conclusion that the statute was meant to cover strict liability claims involving "any product which was in or entered the stream of commerce prior to, on, or after January 1, 1979." " '[P]roduct' means any tangible object or goods distributed in commerce ***." (Ill. Rev. Stat. 1987, ch. 110, pars. 13—213(g), (a)(2), respectively.) The statute expressly includes illnesses or disease that result from an unreasonably dangerous product. (Ill. Rev. Stat. 1987, ch. 110, par. 13—214(a)(3).) On its face, the statute applies to asbestos products and related illnesses. Moreover, defendants cite to legislative publications showing that labor groups and others contributed to the discussion that the lawmakers undertook in drafting the legislation. Apparently, the specific problem of asbestos injuries was brought to the attention of the legislature, as was the fact that the statute would cut off some claims before they could accrue. (See Illinois House of Representatives Judiciary I Subcommittee on Product Liability, Report and Recommendation, Part II, at 7, 79; Journal of Illinois General Assembly (May 25, 1978), at 121 and (May 26, 1978), at 183-84.) Accordingly, we cannot simply carve out an exception to the applicability of our statute, despite the legitimate concern that the impact of the statute burdens some classes of plaintiffs more harshly than others. We can hardly deny that such result appears unfair, from the viewpoint of those plaintiffs barred from bringing strict liability actions. We are not empowered, however, to redraft legislation that has been vigorously debated and necessarily subjected to a difficult balance of competing interests. We conclude that there is no reasoned basis for this court to deviate from the language of the statute, legislative intent, and decisional law in order to exempt asbestos-related injuries from the reach of section 13—213.

██ Plaintiffs next argue that, even if the statute applies to asbestos-related injuries, it only applies to those occurring after January 1, 1979, the effective date of the statute. They do not cite persuasive authority in support of this proposition, however, and in fact the express terms of the statute contradict this position. Subsection 13—213(g) applies the limitation to any cause of action *accruing on or after January 1, 1979*, involving any product which was in or entered into the stream of commerce *prior to*, on, or after that date. (Ill. Rev. Stat. 1987, ch. 110, par. 13—213(g).) An asbestos-related claim accrues upon its discovery. (*Nolan v. Johns-Manville Asbestos* (1981), 85 Ill. 2d 161, 169, 421 N.E.2d 864.) Since plaintiffs' exposure (injury) occurred decades earlier but did not result in diagnosable injury (accrue) until after the January 1979 date, the statute expressly applies to the pending case.

The Illinois Supreme Court has considered the applicability of section 13—213 to an asbestos-related claim. In *Costello v. Unarco Industries, Inc.* (1986), 111 Ill. 2d 476, 490 N.E.2d 675, the plaintiff was exposed to asbestos in 1942 through 1945 but did not discover the resulting illness and file suit until approximately three years after the effective date of section 13—213. Therefore, the statute by its terms cut off the *Costello* plaintiff's inchoate cause of action *before* it accrued.[1] The court held, however, that the plaintiff's cause of action in strict liability was not barred by section 13—213 because common law principles of fairness against immediate application of changes in existing law give plaintiffs a "reasonable" amount of time after the effective date of the new law in which to file suit. The suit was filed within three years of the date of the statute and two years of discovery of the injury. The court accordingly held that the action was timely filed. The court did not, however, define the outer limits of what a reasonable time period would be under section 13—213, despite the concurring opinion's suggestion that the majority "implicitly" held that the eight-year period of repose in the statute was reasonable.

At least two appellate court decisions have since held that approximately seven years is *not* a reasonable time after the effective date of the statute in which to file a strict liability action involving injuries with long latency periods. *Blazek v. Nicolet, Inc.* (1988), 173 Ill. App. 3d 324, 527 N.E.2d 568 (asbestos); *Zimmerman v. Abbott Laboratories, Inc.* (1989), 189 Ill. App. 3d 744, 545 N.E.2d 547 (DES).

---

[1]That is the possible effect of a statute of repose, which is intended to terminate liability after a defined period, regardless of a plaintiff's inability to discover his claim within the time given. *Mega v. Holy Cross Hospital* (1986), 111 Ill. 2d 416, 422-23, 490 N.E.2d 665.

In *Blazek* the court noted that the plaintiff, who was exposed to asbestos products in 1951 and 1952, had an inchoate cause of action from the time of his exposure to the time of his discovery of the resulting injury, a form of cancer. He learned he had cancer in November 1983 and died in September 1984. In September 1985 his representative filed suit, within the two-year discovery period of the statute. The passage of approximately seven years from the effective date of section 13—213 to the discovery and filing of the action, however, was deemed not "reasonable" under *Costello* and existing law.

In *Zimmerman* the court reached a similar result in a case involving DES-related injury. The plaintiff discovered her injury approximately 30 years after her mother had taken the drug during pregnancy. As in *Blazek* and as in the instant case, plaintiff asked the court to allow eight years from the effective date of section 13—213 in which to file. The *Zimmerman* court, however, declined to adopt the eight-year period, and plaintiff's cause of action was held to be barred.

■ We acknowledge the difficulties in determining what is or is not "reasonable" under the *Costello* rationale. To date three years is expressly reasonable, but seven is not. Had the majority in *Costello* agreed with that portion of the concurring opinion which suggested that the eight-year period in subsection 13—213(d) would become the proper measure of what is reasonable, we could accept plaintiffs' contention without further analysis. That is not the law, however, as the *Costello* majority decision, *Blazek*, and *Zimmerman* establish. We have no principled basis from which to depart from those decisions on this issue. Accordingly, we must reject plaintiff's invitation to reinterpret the *Costello* majority's rationale.

■ Plaintiff's final argument restates the preceding issue, casting it in terms of statutory construction. In essence, plaintiffs look to the language of section 13—213(d) which, in their opinion, gives an "outer limit" of eight years in which to discover the injury and bring a strict liability action. Again they cite the special concurring opinion in *Costello*, which implied that the majority intended for the eight-year period in the statute to equate with the "reasonable" period in which to file after the effective date of the statute. They also cite *Moore v. Jackson Park Hospital* (1983), 95 Ill. 2d 223, 447 N.E.2d 408, and *Mega v. Holy Cross Hospital* (1986), 111 Ill. 2d 416, 490 N.E.2d 665, two cases involving the statute of repose applicable to medical malpractice actions. The counterpoint medical practice statute is section 13—212 of the Code of Civil Procedure, which provides a two-year period in which to discover an injury arising out of patient care, but states that "in no event shall such action be brought more than 4 years" after the date on which the

alleged act or occurrence leading to the injury occurred. Ill. Rev. Stat. 1987, ch. 110, par. 13—212(a).

In *Moore*, the plaintiffs were injured before the effective date of the statute of repose, but did not discover their injuries and file suit until after its enactment. As the supreme court would later find in *Costello*, in *Moore* the court held that the statute of repose in issue should be given prospective application to the extent that a reasonable time should be given to previously injured plaintiffs whose causes of action would not ripen until after the effective date of the statute of repose. The majority remanded the case for a determination of whether plaintiffs' lawsuit, filed within four years of the passage of section 13—312, was timely as being filed within a "reasonable" time. A concurring opinion stated that no matter how many years prior a person had been injured, that person had four years from the effective date of the statute to discover his or her injury and bring the action.

In *Mega*, the plaintiffs were injured before the effective date of section 13—212, but did not discover their injuries and file suit until more than four years after the statute of repose had become effective. In holding that their claims were time barred, the majority agreed with the concurring opinion in *Moore* that the four-year period in the statute equated with the reasonable period in which to discover and file suit after the statute's enactment. Justice Clark's dissent in *Mega* argued that the plaintiffs were left without a remedy and that such a result violated the Illinois Constitution.

The varying opinions cited reveal legitimate differences of opinion among judges as to the best approach for mitigating the harshness of statutes of repose during the transitional period after their enactment. Plaintiffs would have us interpret the *Mega* majority opinion with the special concurrences in *Moore and Costello*, to come up with a construction in which the eight-year period in section 13—213 equates with what is a "reasonable" time under common law principles for filing actions after the effective dates of statutes changing limitation periods. To do this we would not only expand the majority's ruling in *Costello*, but totally ignore the reasoning and holdings of *Blazek* and *Zimmerman*. Accordingly, we reject plaintiffs' position.

The judgment of the trial court is affirmed.

McMORROW, P.J., and JIGANTI, J., concur.